DRAKE, Gh. J.,
delivered the opinion of the court:
This suit is brought to recover $50 per day for one hundred and fifty and three-fourths days, as compensation for the schooner Othello under a charter-party thereof, entered into between her master in behalf of the claimant, her owner, and an officer of the Quartermaster Department of the United States Army, on behalf of the United States; by the terms of which charter-party the marine risk was to be borne by the owner of the vessel; and he covenanted and agreed that she was, when the charter-party was signed, and should be kept and maintained during the whole voyage, tight, staunch, strong, and well and sufficiently manned, victualled, tackled, apparaled, and ballasted, and furnished in every respect fit for merchant service, at the cost and charge of her owners.
Under orders from the Quartermaster Department, and laden with ordnance and ordnance stores of the United States, the Othello sailed from Wilmington, North Carolina, for New York City, but was forced, by stress of weather and springing a leak, to bear away and seek shelter in the harbor of St. Thomas, West Indies, where she arrived on the 12th of December, 1805.
At that port G. W. Smith'&• Co. advanced the money necessary to repair the vessel; and on the day of her sailing thence for New York, January 25,1806, the master of the vessel, without having communicated or attempted, to communicate with the United States, or with any one in the Quartermaster Department of the army, or with any one authorized to represent the United States in regard to the cargo, as to his intention to hypothecate the cargo, executed to G. W. Smith & Go., for their advances and charges, a bottomry bond, hypothecating the vessel, freight, and cargo for $15,535 40 in gold, with a premium *153 of 12 per cent, for tbe voyage, making a total of $17,399 71, payable in gold witbin ten days after tbe arrival of tbe vessel at New York.
Sbe arrived at that port on tbe 13tb of February, 1866.
Tbe bottomry bond was not paid, and tbe vessel and cargo were libelled in tbe District Court, and attached on tbe lOtb of March, 1866. The cargo was discharged from tbe marshal’s custody in July, 1866; it being held by tbe District Court, and, on appeal, by tbe Circuit Court, that there was no jurisdiction in tbe former court to detain it in tbe proceeding on tbe bot-tomry bond.
Tbe Othello was discharged from the, service of tbe government on tbe 7th of August, 1866.
Tbisf suit is brought to recover the stipulated per diem compensation for tbe vessel during tbe one hundred and fifty and three-fourths days of her detention by tbe marshal under tbe process of tbe District Court.
In support of this claim, it is contended that tbe master of tbe Othello bad full legal power to execute tbe bottomry bond, hypothecating tbe cargo, as well as tbe vessel and freight; that tbe United States was bound, on tbe arrival of the vessel at New York, to pay in general average its proportion of tbe amount of tbe bond; and having failed to do so, tbe attachment and detention of tbe vessel resulted from such failure, and did not cut off tbe claimant’s right to tbe stipulated per diem compensation. If these positions are sound in law, tbe claimant is entitled to recover •, otherwise not.
It cannot be considered at all doubtful that tbe master of a disabled ship in a foreign port may execute a bottomry bond hypothecating tbe cargo, as well as tbe ship and freight; but there is one rule in regard to tbe hypothecation of tbe cargo which does not apply to that of tbe ship and freight, and is so nearly universal in its operation as to require extraordinary circumstances to authorize its non-observance. That rule is, that before hypothecating tbe cargo, it is tbe duty of tbe master to communicate, or attempt to communicate, with its owner, if in tbe circumstances in which be is placed it be reasonable that be should, and rational to expect that be may, obtain an answer within a time not inconvenient with reference to tbe circumstances of tbe case.
This rule was sustained by tbe judicial committee of tbe Privy *154 Council of Great Britain, in 1864, in the case of The Hamburg, (2 Maritime Law Oases, 1,) in terms so clear and so apposite to this case that we cannot do better than present them here. Sir J. T. Coleridge, in pronouncing the judgment of the committee, said:
“In the rule thus enunciated their lordships are unable to discern any novelty, either in the principal on which it rests, or in its application to the case of the hypothecation of the cargo of a ship by the master. The character of agent for the owners of the cargo is imposed upon the master by the necessity of the case, and by that alone. In the circumstances supposed, something must be done, gnd there is nobody present who has authority to decide what shall be done. The master is invested, by presumption of law, with authority to give directions, on this ground, that the owners have no means of expressing their wishes. But when such means exist,- when communication can be made to the owners, and they can give their own orders, the character of agent is not imposed upon the master, because the necessity which creates it does not arise. It is clear that the rule as to communication must be either that in no case and under no circumstances it is incumbent on him so to do ; either the universal negative or the particular affirmative proposition must hold, and both cannot be true, although one must be. But it has not been contended, and cannot reasonably be argued, that the first proposition is true. Where the cargo belongs to a single individual known to the master; the ship in a port in the same country, or near to it, in which that owner is resident; the means of communication sure and speedy ; the probable delay inconsiderable; the cargo not of a perishable kind; the money to be borrowed so large as to be sure to bring it within the operation of the bond, it could not be contended that the master could properly hypothecate it for the repairs of the vessel without first communicating with the owner. Equally clear it is that where all these circumstances were reversed, no such duty would be incumbent on him.”
Applying the doctrine thus stated to the case in hand, we find it in almost every particular directly applicable to it. True, the Othello was not in an American port, or in a port which could be strictly called near to the United States; but it was a port between which and the United States the means of communication were sure and speedy, being by steam vessels as well *155 as sailing vessels; the probable delay resulting from attempted communication was not considerable; tire cargo belonged to one ' owner, and was not of a perishable kind; and the amount of money to be borrowed was so large as to be sure to bring the cargo within the operation of the bond. As evidence of the facility and speed of communication between St. Thomas and New York at that time, the fact appears in the record that on the 28th of December, 1865, sixteen days after the Othello put into the port of St. Thomas, the fact was made known by letter to the United States quartermaster at New York.
In the midst of these concurring circumstances, all pointing to the propriety and necessity of communicating, or, at least, attempting to communicate, with the owner of the cargo, as to its hypothecation, the master made no attempt at such communication, did not even mention the idea of it, so far as appears in evidence, to any one, but proceeded to hypothecate the cargo, as well as the vessel and freight.
Had the owner of the cargo been an individual, the master could not, under the circumstances, have imposed such a liability on his cargo; much less could he do so upon the government of the United States, against which the liability of the cargo under the bond could not be enforced in any court in the land by a proceeding in rem. The District Court held itself without jurisdiction to enforce the bond against the cargo belonging to the government; and the Circuit Court, on appeal, affirmed that decision.
What, then, is the claimant’s position here? He demands compensation for the detention of the vessel by legal proceedings which were cor am non judice as to the cargo, and which, as to the cargo, would never have been taken but for the act of his agent in hypothecating the cargo; which hypothecation was not only unauthorized because of his making no attempt before executing it to communicate with the owner of the cargo, but was incapable of enforcement against the cargo in any court of the country in which, if at all, it was to be enforced.
The detention so caused was not by the act of the government, ■ but by the claimant’s own act. Even supposing the master’s failure to communicate or attempt to communicate with the government to have been justifiable, he was chargeable with knowledge that the bond he gave could not be judicially enforced against the cargo anywhere in the United States, and *156 that, therefore, his hypothecation of the cargo was only laying the foundation for difficulty on that score, the results of which would be fairly attributable to his own act. But even if not chargeable with that knowledge, still the fact remains that the detention of the vessel under judicial process was the consequence of his act, from which resulted the unauthorized proceeding against the cargo.
It is no answer to this to say that if the government had paid the share of the bond which it ought rightfully to have paid, the detention would not have taken place. That brings back the primary question of the legal authority of the master, under the circumstances, to hypothecate the cargo, and it rests upon the claimant to show that authority. He does not show it by merely proving the two facts, that the vessel was disabled, and that the master hypothecated her to get money to repair her. That is all that has been established here, and it is not enough to throw upon the government the responsibility and the consequences of the judicial detention of the vessel. During the period of that detention the vessel was not in the employ'of the government, nor was the claimant capable of using her in that employ; but, on- the contrary, she was out of, and effectually disabled from, employment, by the claimant’s own act, through the master. The consequences of that act must, therefore, rest upon himself.
The petition of the claimant is dismissed.